IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| ANDREA DAVID, | : | CIVIL ACTION |
| | : | NO. 15-4098 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NEUMANN UNIVERSITY, et al., | : | |
| | : | |
| Defendants. | : | |


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          April 11, 2016

        This case arises out of Plaintiff Andrea David's
termination from Defendant Neumann University's doctoral program
in physical therapy. Defendants Neumann University, Dr. Karen
Albaugh, and Dr. Scott Biely (collectively, "Defendants") have
moved to dismiss Plaintiff's Complaint. For the reasons that
follow, the Court will grant Defendants' motion.

## I.    BACKGROUND AND PROCEDURAL HISTORY

        In May 2013, Plaintiff, an African American female,
enrolled in the Physical Therapy Doctorate Degree Program at
Neumann University, located in Aston, Pennsylvania. Compl. ¶¶ 2,
9. Plaintiff alleges that Defendants Albaugh and Biely, two of
her professors, created and perpetuated a racist environment by
repeatedly referring to bone structures in the human skeleton as

"slaves" and "slave masters" during Plaintiff's classes. Id. ¶¶ 29, 39.

Plaintiff also alleges that Defendants Albaugh and Biely treated Plaintiff differently than other non-African American students by making Plaintiff's practicum examination more difficult and failing to follow the student handbook policies and regulations with respect to Plaintiff's evaluation. Id. ¶¶ 38, 40, 41, 42. After Plaintiff passed three sections of her practicum examination on May 3, 2014, id. ¶ 32, Defendant Albaugh administered, and Defendant Biely observed, the "transfer section" of the practicum to Plaintiff on May 8, 2014. Id. ¶ 33. Plaintiff received a grade of "F" on the exam, which resulted in her termination from the program on or about May 16, 2014. Id. ¶¶ 10, 33.

Plaintiff initiated this action on July 23, 2015. ECF No. 1. Plaintiff brings the following counts: (1) breach of contract against the University, (2) quantum meruit against the University, (3) racial discrimination under Title VI and Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 against the University, and (4) racial discrimination under Title VI and Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 against Defendants Albaugh and Biely.

Defendants moved to dismiss the Complaint for failure to state a claim on December 3, 2015. ECF No. 7. Plaintiff

2

responded, ECF No. 10, and Defendants have moved for leave to file a reply, attaching the reply brief thereto.[1] ECF No. 11. After a hearing with counsel for the parties, Defendant's motion to dismiss is now ripe for disposition.

## II.  LEGAL STANDARD

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering such a motion, the court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (internal quotation marks omitted). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the Court is "not bound to accept as true a

---

[1]      Defendant's motion for leave to file a reply brief will be granted.

legal conclusion couched as a factual allegation." <u>Papasan v.</u>
<u>Allain</u>, 478 U.S. 265, 286 (1986).

The pleadings must contain sufficient factual
allegations so as to state a facially plausible claim for
relief. <u>See, e.g.</u>, <u>Gelman v. State Farm Mut. Auto. Ins. Co.</u>, 583
F.3d 187, 190 (3d Cir. 2009). "'A claim has facial plausibility
when the plaintiff pleads factual content that allows the court
to draw the reasonable inference that the defendant is liable
for the misconduct alleged.'" <u>Id.</u> (quoting <u>Ashcroft v. Iqbal</u>,
556 U.S. 662, 678 (2009)). In deciding a Rule 12(b)(6) motion,
the Court limits its inquiry to the facts alleged in the
complaint and its attachments, matters of public record, and
undisputedly authentic documents if the complainant's claims are
based upon these documents. <u>See</u> <u>Jordan v. Fox, Rothschild,</u>
<u>O'Brien & Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994); <u>Pension</u>
<u>Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d
1192, 1196 (3d Cir. 1993).

**III. DISCUSSION**

Defendants move to dismiss all claims in Plaintiff's
Complaint based on a variety of arguments, each of which is
addressed in turn.

A.   Breach of Contract, Promissory Estoppel, Fundamental
     Fairness, and Due Process Claims Against the
     University

Defendants argue that Count 1 of Plaintiff's Complaint
must be dismissed because Plaintiff has not (1) set forth any
specific contractual provisions allegedly breached,
(2) identified any express promise or detrimental reliance, or
(3) established a violation of fundamental fairness or due
process. The Court agrees with all three arguments.

First, Plaintiff has failed to set forth any specific
contractual provisions that the University allegedly breached.
Under Pennsylvania law, the relationship between a private
university and a student is contractual. Swartley v. Hoffner,
734 A.2d 915, 919 (Pa. Super. Ct. 1999). The contract is
"comprised of the written guidelines, policies, and procedures
as contained in the written materials distributed to the student
over the course of their enrollment in the institution." Id. To
state a breach of contract claim, the plaintiff must allege the
existence of a contract, a breach of the contract by the
defendant, and damages resulting from the breach. McShea v. City
of Philadelphia, 995 A.2d 334, 340 (Pa. 2010).

While Pennsylvania law allows a student to sue a
private university for breach of contract, "the allegations must
relate to a specific and identifiable promise that the school
failed to honor." Vurimindi v. Fuqua Sch. of Bus., 435 F. App'x

5

129, 133 (3d Cir. 2011) (nonprecedential) (citing <u>Swartley</u>, 734 A.2d at 919; <u>Ryan v. Univ. of N.C. Hosps.</u>, 494 S.E.2d 789, 791 (N.C. App. 1998)). As such, the student "must point to specific undertakings in the [contract] that were not provided." <u>Miller v. Thomas Jefferson Univ. Hosp.</u>, 908 F. Supp. 2d 639, 655 (E.D. Pa. 2012); <u>see also</u> <u>Hart v. Univ. of Scranton</u>, No. 11-1576, 2012 WL 1057383, at *4 (M.D. Pa. Mar. 28, 2012) (dismissing breach of contract claim against university where plaintiff failed to point to any specific terms in the handbook that the university allegedly violated); <u>Bradshaw v. Pa. State Univ.</u>, No. 10-4839, 2011 WL 1288681, at *2 (E.D. Pa. Apr. 5, 2011) (same).

Here, "it is not at all clear which polic[ies] or procedure[s]" the University allegedly breached. <u>Harris v. Saint Joseph's Univ.</u>, No. 13-3937, 2014 WL 1910242, at *3 (E.D. Pa. May 13, 2014). Plaintiff makes only general references to the handbook, syllabi, and protocols. Compl. ¶ 16(a)-(g). Although Plaintiff provides additional details about the handbook in her response to Defendant's motion, Pl.'s Resp. at 4, 8, ECF No. 10, these allegations cannot be considered for purposes of Defendants' motion to dismiss. <u>See</u> <u>Jordan</u>, 20 F.3d at 1261 (the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon

6

these documents). Therefore, Plaintiff has failed to state a claim for breach of contract.

Second, Plaintiff fails to state a claim for promissory estoppel. To state a promissory estoppel claim under Pennsylvania law, a plaintiff must allege that (1) the defendants made a promise that they should have reasonably expected to induce action or forbearance on plaintiff's part; (2) the plaintiff actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise. See Crouse v. Cyclops Indus., 745 A.2d 606, 610 (Pa. 2000). "To satisfy the first element of a promissory estoppel claim, plaintiff must plead facts to show the existence of an express promise made by defendants. In meeting this burden, plaintiff cannot rely on a broad and vague implied promise." Rapid Circuits, Inc. v. Sun Nat'l Bank, No. 10-6401, 2011 WL 1666919, at *18 (E.D. Pa. May 3, 2011).

Here, Plaintiff has not pleaded any factual allegations from which the Court can infer any express promise made to her by the University. Plaintiff alleges only that Defendants "violat[ed] promises and representations to plaintiff concerning her course of studies upon which she relied." Compl. ¶ 16(f). And she has not alleged detrimental reliance on any

such promise. Therefore, Plaintiff's promissory estoppel claim must be dismissed.

Third, Plaintiff has failed to state a violation of fundamental fairness and due process. Although it is unclear how Plaintiff intends to present this claim, Plaintiff states in her response to Defendant's motion that she "does not allege that Neumann is subject to § 1983 liability as a state actor, but that the University, acting through its agent professors, may not act in an arbitrary and capricious fashion as a result of the contract with plaintiff." Pl.'s Resp. 7. It therefore appears that Plaintiff intends to assert a theory of procedural due process.

But "[p]rivate institutions need not endow their students with the constitutional due process protections that state universities are obliged to provide." Kimberg v. Univ. of Scranton, 411 F. App'x 473, 481 (3d Cir. 2010) (nonprecedential) (citing Psi Upsilon of Phila. v. Univ. of Pa., 591 A.2d 755, 758 (Pa. Super. Ct. 1991)). Moreover, the notion of "fundamental fairness" typically arises in the disciplinary context. See id. ("While private colleges enjoy wide latitude to structure their internal disciplinary procedures as they see fit, they are limited by the principle that such procedures must be 'fundamentally fair.'"(internal citation omitted)).

Here, Plaintiff merely alleges that the University "fail[ed] to treat [her] with fundamental fairness in assigning her a failing grade during her practicum examination" and "dismissed [her] in an arbitrary and capricious manner, without appropriate due process and fundamental fairness." Compl. ¶¶ 16(g), 21. These are conclusory allegations that are not entitled to the presumption of truth. Papasan, 478 U.S. at 286. Moreover, Plaintiff was dismissed for poor academic performance, not as a disciplinary measure. See Compl., Ex. A. Therefore, Count 1 of Plaintiff's Complaint will be dismissed for failure to state a claim.

B.   Quantum Meruit Claim Against the University

Defendants next move to dismiss Plaintiff's quantum meruit claim against the University. "Quantum meruit is an equitable remedy to provide restitution for unjust enrichment in the amount of the reasonable value of services." Durst v. Milroy Gen. Contracting, Inc., 52 A.3d 357, 359 (Pa. Super. Ct. 2012) (citing Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 532 n.8 (Pa. 2010)). Where unjust enrichment is found, the law implies a contract, which requires the defendant to pay to the plaintiff the value of the benefit conferred. Schenck v. K.E. David, Ltd., 666 A.2d 327, 328-29 (Pa. Super. Ct. 1995). To bring a claim for unjust enrichment under Pennsylvania law, a

plaintiff must allege (1) "benefits conferred on defendant by plaintiff"; (2) "appreciation of such benefits by defendant"; and (3) "acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." Durst, 52 A.3d at 359 (citing Schenck, 666 A.2d at 328).

Here, Plaintiff alleges that the University was unjustly enriched "by retaining her tuition payment when it mishandled her grades and illegally dismissed her." Compl. ¶ 20. Plaintiff also alleges that the University failed to refund her tuition once she was dismissed from the program. Id. ¶ 21.

But Plaintiff fails to allege how it would be unconscionable for the University to retain the tuition paid for classes that she attended. See, e.g., Bradshaw, 2011 WL 1288681, at *1 (finding that the plaintiff failed to state a claim for unjust enrichment because she made no allegation that the law school failed to hold classes for which she paid her tuition or that she was prevented from attending those classes); see also Bleiler v. Coll. of Holy Cross, No. 11-11541, 2013 WL 4714340, at *18 (D. Mass. Aug. 26, 2013) (finding no unjust enrichment where the plaintiff "paid for and received an education, academic credit, room, board, and other services"). Thus, Plaintiff has failed to state a claim for quantum meruit against the University.

C.   <u>Title VI Claim Against All Defendants</u>

Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To state a Title VI claim, a plaintiff must allege that he or she (1) was a member of a protected class, (2) qualified for the benefit or program at issue, (3) suffered an adverse action, and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. <u>Se. Pa. Transp. Auth. v. Gilead Scis., Inc.</u>, 102 F. Supp. 3d 688, 701 (E.D. Pa. 2015) (citing <u>Blunt v. Lower Merion Sch. Dist.</u>, 767 F.3d 247, 272 (3d Cir. 2014)). An allegation of intentional discrimination is required, <u>Blunt</u>, 767 F.3d at 272, and may be satisfied "with evidence demonstrating either discriminatory animus or deliberate indifference." <u>Gilead</u>, 102 F. Supp. 3d at 701.

Here, Plaintiff's Title VI claim against the University must be dismissed. Plaintiff's conclusory allegations that the University "creat[ed] and perpetuat[ed] a racist environment" based on Defendants Albaugh and Biely's alleged use of the words "slaves" and "slave masters" do not demonstrate discriminatory animus or deliberate indifference by the

11

University. See Compl. ¶ 29. And there is no allegation that the University had actual knowledge of Albaugh and Biely's alleged discriminatory comments. See Blunt v. Lower Merion Sch. Dist., 826 F. Supp. 2d 749, 762 (E.D. Pa. 2011) ("Without evidence that the document was created with the authorization of the School District or that the School District had actual knowledge of any presentation, any discrimination that can be inferred from its creation or presentation cannot be imputed to the School District.").

Plaintiff's claim against Defendants Albaugh and Biely must also be dismissed because individual liability may not be asserted under Title VI. Whitfield v. Notre Dame Middle Sch., 412 F. App'x 517, 521 (3d Cir. 2011) (nonprecedential); see also Shannon v. Lardizzone, 334 F. App'x 506, 508 (3d Cir. 2009) (nonprecedential) ("Courts have held that, because Title VI forbids discrimination only by recipients of federal funding, individuals cannot be held liable under Title VI. We agree with this reasoning.") (citing Shotz v. City of Plantation, 344 F.3d 1161, 1169 (11th Cir. 2003); Buchanan v. City of Bolivar, 99 F.3d 1352, 1356 (6th Cir. 1996)).

D.   Title VII Claim Against all Defendants

Title VII of the Civil Rights Act of 1964 forbids a covered employer "to fail or refuse to hire or to discharge any

individual, or otherwise to discriminate against any individual
with respect to his compensation, terms, conditions, or
privileges of employment, because of such individual's race,
color, religion, sex, or national origin." 42 U.S.C. § 2000e-
2(a)(1). It also forbids a covered employer "to limit,
segregate, or classify his employees or applicants for
employment in any way which would deprive or tend to deprive any
individual of employment opportunities or otherwise adversely
affect his status as an employee, because of such individual's
race, color, religion, sex, or national origin." Id. § 2000e-
2(a)(2).

       Here, Plaintiff fails to state a Title VII claim
against all Defendants because she has not alleged an employment
relationship with any Defendant. See Tyrrell v. City of
Scranton, 134 F. Supp. 2d 373, 380 (M.D. Pa. 2001) ("[T]he lack
of an employment relationship between the plaintiff and the
defendant will preclude liability under Title VII." (citing
United States v. Bd. of Educ. for Sch. Dist. of Phila., 911 F.2d
882, 891 (3d Cir. 1990)). Rather, Plaintiff states that "[a]t
all times material herein, plaintiff was a graduate student at
Neumann." Compl. ¶ 5. And, in any event, individual employees
like Albaugh and Biely, cannot be liable under Title VII. See
Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1078

13

(3d Cir. 1996). Thus, Plaintiff's Title VII claim against all Defendants will be dismissed.

      E.   <u>Section 1981 Claim Against All Defendants</u>

      To state a prima facie claim under § 1981, a party must allege facts sufficient to show: "(1) [the plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts." <u>Brown v. Philip Morris Inc.</u>, 250 F.3d 789, 797 (3d Cir. 2001) (internal quotation marks omitted) (quoting <u>Yelverton v. Lehman</u>, No. 94-6114, 1996 WL 296551, at *7 (E.D. Pa. June 3, 1996)).

      Based on the Complaint, it appears that Plaintiff intends to proceed under two theories of § 1981 liability: (1) hostile environment and (2) disparate treatment. But Plaintiff fails to state a claim under either theory.

      First, where a § 1981 claim is based on a hostile environment, a plaintiff must show "(1) that he or she suffered intentional discrimination because of race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race

in that position; and (5) the existence of respondeat superior liability." Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081 (3d Cir. 1996). A plaintiff must allege facts from which the Court can infer that the defendant's alleged acts created an "objective change in the conditions" of her environment. Greer v. Mondelez Glob., Inc., 590 F. App'x 170, 174 (3d Cir. 2014) (nonprecedential).

Here, Plaintiff alleges that Defendants created "an offensive and hostile environment through the [individual defendants'] repeated use of the terms 'slave' and 'slave master' to describe certain anatomical structures in classes which plaintiff attended." Compl. ¶ 13. She also alleges that Defendants "used racially offensive language." Id. ¶¶ 43-44. But Plaintiff's conclusory allegation that this conduct was "extremely offensive," id. ¶ 30, is insufficient to give rise to a hostile environment claim. See Greer, 590 F. App'x at 173 ("'Mere offensive utterances' are insufficient to create a hostile environment, even if they engender offensive feelings."). Plaintiff also fails to allege that these comments were pervasive, serious, or detrimental to her learning environment. Therefore, Plaintiff's § 1981 claim based on a hostile environment theory must be dismissed as to all Defendants.

Second, a § 1981 disparate treatment claim relies on allegations that the actor "simply treats some people less favorably than others because of their race, color, [or other protected characteristics]." Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977). To plead a prima facie case of disparate treatment in an educational setting, a plaintiff must allege that "(1) he is a member of a protected class; (2) he suffered an adverse action at the hands of the defendants in his pursuit of his education; (3) he is qualified to continue his pursuit of his education; and (4) he was treated differently from similarly situated students who are not members of a protected class." Ke v. Drexel Univ., No. 11-6708, 2015 WL 5316492, at *17 (E.D. Pa. Sept. 4, 2015) (citing Bell v. Ohio State Univ., 351 F.3d 240, 252-53 (6th Cir. 2003)). Discriminatory motive must be shown to support this type of claim. Teamsters, 431 U.S. at 355 n.15.

Here, Plaintiff alleges that she, as an African American, belongs to a protected class. Compl. ¶¶ 13, 25, 37. She alleges that the University took adverse action against her by terminating her from the doctorate program. Id. ¶ 10. According to Plaintiff, she was treated differently from similarly situated students who are not African American. She specifically alleges that Defendants Albaugh and Biely discriminated against her "by refusing to treat [her] in an

16

impartial manner, and differently than white students, in the
classroom and in evaluating Ms. David." Id. ¶¶ 41, 42.

But Plaintiff has not alleged that she was qualified
to continue her education at the University. Ke, 2015 WL
5316492, at *17. She alleges that she passed three sections of
her practicum before receiving an "F" on the fourth section. Id.
¶¶ 32, 33. Plaintiff does not allege that passing three out of
the four practicum sections was sufficient for her continued
participation in the program. Although she states the "F" was
"unfairly and illegally received," id. ¶ 33, this legal
conclusion is not entitled to the presumption of truth. Thus,
because Plaintiff does not allege any facts from which the Court
could infer the third element of a disparate treatment claim,
Plaintiff's § 1981 claim must be dismissed as to all Defendants.

## IV.   LEAVE TO AMEND

"Leave to amend must generally be granted unless
equitable considerations render it otherwise unjust." Arthur v.
Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006) (citing Forman v.
Davis, 371 U.S. 178, 182 (1962)). In civil rights cases,
"district courts must offer amendment – irrespective of whether
it is requested – when dismissing a case for failure to state a
claim unless doing so would be inequitable or futile." Fletcher-
Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247,

251 (3d Cir. 2007). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000).

Here, amendment to Plaintiff's Title VI claim as against Defendants Albaugh and Biely would be futile because individual liability is not available under the statute. Amendment of Plaintiff's Title VII claim as against all Defendants would also be futile because Plaintiff has stated that "[a]t all times material herein, plaintiff was a graduate student at Neumann," Compl. ¶ 5, and individual employees like Defendants Albaugh and Biely cannot be liable under Title VII. Therefore, these claims will be dismissed with prejudice.

Plaintiff will be afforded the opportunity to amend her breach of contract claims against the University, her quantum meruit claim against the University, her Title VI claim against the University, and her § 1981 claim against all Defendants. As such, these claims will be dismissed without prejudice. But the identified deficiencies discussed herein must be cured for Plaintiff's case to survive a subsequent motion to dismiss.

18

**V.    CONCLUSION**

For these reasons, Defendants' motion to dismiss will be granted and Plaintiff's Complaint will be dismissed with leave to amend. An appropriate order follows.