IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


ANDREA DAVID,                           :     CIVIL ACTION
                                        :     NO. 15-4098
          Plaintiff,                    :
                                        :
     v.                                 :
                                        :
NEUMANN UNIVERSITY, et al.,             :
                                        :
          Defendants.                   :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              June 9, 2016

          This case arises out of Plaintiff Andrea David's
termination from the Doctoral Program in Physical Therapy at
Neumann University. Plaintiff brings this action against
Defendants Neumann University ("the University"), Dr. Karen
Albaugh, and Dr. Scott Biely (collectively, "Defendants"). The
Court previously granted Defendants' Motion to Dismiss
Plaintiff's original Complaint but granted Plaintiff leave to
amend in part. Plaintiff filed an Amended Complaint, which
Defendants have also moved to dismiss. For the reasons that
follow, the Court will grant Defendants' motion, dismiss
Plaintiff's Amended Complaint with prejudice, and deny Plaintiff
leave to amend.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

In May 2013, Plaintiff, an African American female, enrolled in the Physical Therapy Doctorate Degree Program at Neumann University, which is located in Aston, Pennsylvania. Am. Compl. ¶¶ 9, 20, ECF No. 21. Plaintiff passed three sections of her practicum examination on May 3, 2014, id. ¶ 30, but failed the "transfer section," which was administered by Defendants Albaugh and Biely. Id. ¶ 31. Plaintiff received a grade of "F" on the exam, which resulted in her termination from the program on or about May 16, 2014. Id. ¶¶ 10, 31.

Plaintiff alleges that Defendants Albaugh and Biely treated Plaintiff differently than other non-African American students by making Plaintiff's practicum examination more difficult and failing to follow the student handbook and regulations with respect to Plaintiff's evaluation. Id. ¶¶ 36, 38. According to Plaintiff, Defendants Albaugh and Biely also created and perpetuated a racist environment by repeatedly referring to bone structures in the human skeleton as "slaves" and "slave masters" during Plaintiff's classes. Id. ¶¶ 13, 20, 27, 37, 44.

In her original Complaint, Plaintiff brought the following claims: (1) breach of contract against the University, (2) unjust enrichment against the University, (3) racial discrimination under Title VI and Title VII of the Civil Rights

2

Act, and 42 U.S.C. § 1981 against the University, and (4) racial discrimination under Title VI and Title VII of the Civil Rights Act, and 42 U.S.C. § 1981 against the individual defendants. ECF No. 1.

Defendants moved to dismiss the Complaint for failure to state a claim on December 3, 2015. ECF No. 7. After a hearing, the Court granted Defendants' motion to dismiss without prejudice and granted Plaintiff leave to file an amended complaint as to her breach of contract claims against the University, her Title VI claim against the University, and her § 1981 claim against all Defendants. ECF Nos. 16, 17.

Plaintiff filed her Amended Complaint on April 26, 2016, alleging breach of contract against the University, racial discrimination under Title VI and § 1981 against the University, and racial discrimination under § 1981 against Defendants Albaugh and Biely. ECF No. 21. Defendants again moved to dismiss for failure to state a claim. ECF No. 22. Plaintiff responded and withdrew her § 1981 cause of action. ECF No. 25. The Court held a hearing with counsel for the parties, and Defendants' motion is now ripe for disposition.

## II.  LEGAL STANDARD

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P.

12(b)(6). When considering such a motion, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (internal quotation marks omitted). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In deciding a Rule 12(b)(6) motion,

the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**III. DISCUSSION**

Defendants move to dismiss Plaintiff's remaining claims. Each of Defendants' arguments are addressed in turn.

A. Breach of Contract Claim Against the University

Defendants argue that Plaintiff's contract claim against the University fails because Plaintiff has failed to identify any specific promise by the University that created a contractual obligation to Plaintiff and failed to allege any facts that would plausibly suggest that the University breached any such obligation. Finally, Defendants contend that Plaintiff failed to state a claim based on a violation of fundamental fairness or due process. The Court agrees.

Under Pennsylvania law, the relationship between a private university and a student is contractual, the contract being "comprised of the written guidelines, policies, and procedures as contained in the written materials distributed to

the student over the course of his or her enrollment in the institution." Swartley v. Hoffner, 734 A.2d 915, 919 (Pa. Super. Ct. 1999). To state a breach of contract claim, the plaintiff must allege the existence of a contract, a breach of the contract by the defendant, and damages resulting from the breach. McShea v. City of Philadelphia, 995 A.2d 334, 340 (Pa. 2010).

While Pennsylvania law allows a student to sue a private university for breach of contract, "the allegations must relate to a specific and identifiable promise that the school failed to honor." Vurimindi v. Fuqua Sch. of Bus., 435 F. App'x 129, 133 (3d Cir. 2011) (per curiam) (nonprecedential). As such, the student "must point to specific undertakings in the [contract] that were not provided." Miller v. Thomas Jefferson Univ. Hosp., 908 F. Supp. 2d 639, 655 (E.D. Pa. 2012); see also Bradshaw v. Pa. State Univ., No. 10-4839, 2011 WL 1288681, at *2 (E.D. Pa. Apr. 5, 2011) (dismissing breach of contract claim against university where the complaint failed to specifically identify the handbook provisions allegedly violated).

Here, Plaintiff purports to identify three sources of contractual obligations that the University allegedly breached, but these attempts fall short. First, Plaintiff points to the grading rubric for the practicum examination that she failed (at issue in this case). Am. Compl. Ex. B, ECF No. 21-2. Plaintiff

argues that the University breached a contractual obligation because she "was not given the assistance required by the written grading rubric, dated 05/08/14, before being assigned 0% on a key portion of her clinical examination, by defendant Albaugh, which resulted in her dismissal." Id. ¶ 18.

But there is nothing in the grading rubric that amounts to a requirement or promise by the University that Plaintiff would be afforded "assistance . . . before being assigned 0%." Id. And Plaintiff cites to no other source of the alleged promise of assistance, such as written guidelines or policies from the University in existence before the exam. Therefore, this allegation cannot satisfy the Pennsylvania law requirement that a plaintiff point to a specific contractual obligation in order to state a claim for relief.

Second, Plaintiff looks to Defendant Biely's written report. Am. Compl. Ex. C, ECF No. 21-3. Plaintiff alleges that Defendants "fail[ed] to submit plaintiff's dismissal to the entire faculty, which was required, according to the 05/16/14 written report of defendant Scott Biely." Am. Compl. ¶ 19. But Defendant Biely's report, which appears to be a letter documenting Defendant Biely's personal narrative of the events surrounding Plaintiff's examination and subsequent dismissal, cannot create a contractual obligation owed by the University to Plaintiff prior to her practicum. See, e.g., Pennsy Supply, Inc.

v. Am. Ash Recycling Corp. of Pa., 895 A.2d 595, 600 (2006)
("Consideration must actually be bargained for as the exchange
for the promise." (quoting Stelmack v. Glen Alden Coal Co., 14
A.2d 127, 129 (Pa. 1940))). Therefore, Defendant Biely's written
report cannot provide the basis for Plaintiff's breach of
contract claim against the University.

      Plaintiff's reliance on Bradshaw, 2011 WL 1288681, is
severely misplaced, because Bradshaw does not support
Plaintiff's claim in any way. In Bradshaw, the plaintiff had
been terminated from the Dickinson School of Law. Id. at *1.
Among other things, the plaintiff alleged that the university-
defendant had breached its contractual obligations. Id. at *2.
But the district court held that the plaintiff failed to state a
cause of action for breach of contract. Id. The court explained
that "[t]he plaintiff does not identify . . . the provisions of
the handbook that the defendant allegedly breached." Id.
However, the court permitted the plaintiff to amend her
complaint because, in her response to the defendant's motion,
she referenced a provision of the student handbook stating that
the Academic Rules Committee maintained a protocol for student
dismissal that potentially applied to plaintiff's claim. Id. In
so permitting, the court stressed that plaintiff's amended
complaint must "allege specifically the terms of the contract in

dispute, the defendant's breach thereof, and the harm that resulted." Id.

Here, like the plaintiff in Bradshaw, Plaintiff has failed to state a cause of action for breach of contract, because she has failed to specifically identify the terms of a contract in dispute or the University's breach thereof. Thus, as in Bradshaw, the Court will dismiss Plaintiff's claim.[1]

Third, Plaintiff refers to the University Student Affairs Handbook and its policy of "zero tolerance" for racial discrimination, hostile environments, and retaliatory action. Am. Compl. ¶ 20. The University's "Harassment Policy and Procedures" state that "[i]t is the policy and practice of Neumann University to offer campus and University-related activities to all students . . . that are free from offensive and unwelcome conduct, actions and words directed at others because of one's membership in a protected class." Am. Compl. Ex. D at 1, ECF No. 21-4. The Handbook also states that the

---

[1]     Plaintiff's reliance on Elliot v. University of Cincinnati, 730 N.E.2d 996 (Ohio Ct. App. 1999), is also unavailing. First, the Ohio intermediate court in Elliot applied Ohio contract law, whereas Pennsylvania state law applies to the case at bar. Second, Plaintiff cites Elliot for the proposition that a university breaches its contract by failing to have the required number of committee members present at a plaintiff-student's oral examination. Pls.'s Resp. 9, ECF No. 25. The provisions at issue in Elliot were specific to the University of Cincinnati's bulletin and handbook, and the plaintiff in that case pointed to those specific provisions. Here, Plaintiff does not identify any specific provision in Neumann University's Handbook, and thus her claim fails.

"University does not condone any form of harassment" and "encourages any individual who believes he or she has been the victim of harassment . . . to report immediately the incident or incidents giving rise to such concerns." Id.

A school's anti-harassment policy "may fall under one or more of the categories of documents that can create a [contract] between a student and a school," Gjeka v. Del. Cty. Cmty. Coll., No. 12-4548, 2013 WL 2257727, at *14 (E.D. Pa. May 23, 2013) (applying Pennsylvania law), if the requirements for an enforceable contract are otherwise met. It cannot be said that a school's anti-discrimination or anti-harassment policy constitutes an enforceable contract per se between the university and the student. Specifically, like all other contracts, the terms of the agreement must be "sufficiently definite to be enforced." Reynolds v. Univ. of Pa., 747 F. Supp. 2d 522, 542 (E.D. Pa. 2010) (citing ATACS Corp. v. Trans World Commc'ns, Inc., 155 F.3d 659 (3d Cir. 1998)).

Here, Plaintiff identifies no terms that are sufficiently definite. Instead of contractually guaranteeing a right to specific types of investigation, support, or sanctions in the event that a student experiences offensive and unwelcome conduct, the provisions merely declare the University's aspirational approach to "complaints involving illegal discrimination, harassment and/or retaliation." Am. Compl. Ex. D

at 1; see <u>Nungesser v. Columbia Univ.</u>, No. 15-3216, 2016 WL
1049024, at *9 (S.D.N.Y. Mar. 11, 2016) (explaining that "a
general statement of a university's adherence to existing anti-
discrimination laws does not create a separate and independent
contractual obligation" (internal quotation marks omitted)
(citation omitted)). And such provisions are not definite enough
to be enforced.

       For example, in <u>Vurimindi</u>, a student filed an action
against a university for, inter alia, breach of contract. 435 F.
App'x at 131. The plaintiff cited the university's mission,
diversity, and anti-harassment policy statements as the basis
for his purported contract with the university. <u>Id.</u> at 132. The
Third Circuit held that the plaintiff could not base his breach
of contract claim on these policy statements, which stated that
the university "appreciates and values differences." <u>Id.</u> at 133-
34. The court explained that the university's policy statement
constituted a "general anti-harassment policy" that "did no more
than present [the university's] view that harassment is
unacceptable because it is inconsistent with its stated
commitment to excellence." <u>Id.</u> at 133. All in all, the plaintiff
"cited no promises that [the university] made regarding how he
would be received by the other students or professors." <u>Id.</u> at
133-34.

Here, like in <u>Vurimindi</u>, the University's "Harassment
Policy and Procedures" constitute a general anti-harassment and
anti-retaliation policy that does no more than present the
University's view that harassment is unacceptable in University-
related activities. Plaintiff cites no Handbook provision, or
any other University guideline, policy, or procedure, promising
that a student would be completely insulated from language or
conduct that personally offended her to some degree. In other
words, Plaintiff has not shown how the University's general,
aspirational policy statement created any sort of affirmative,
enforceable duty on the part of the University. <u>See, e.g.</u>, <u>Hart
v. Univ. of Scranton</u>, No. 11- 1576, 2012 WL 1057383, at *3 (M.D.
Pa. Mar. 28, 2012) (determining that the plaintiff failed to
state a breach of contract claim based on the university
handbook's plagiarism provision because the plaintiff relied on
the provision's existence without showing "how th[e] term has
created an affirmative duty on the part of the University.").
Therefore, Plaintiff has failed to plead a breach of contract
claim based on the handbook's "zero tolerance" provision.

Finally, subsumed within her breach of contract claim,
Plaintiff alleges that "[t]his cause of action is
for . . . violation of fundamental fairness[] and due process."
Am. Compl. ¶ 15. A theory of liability based on fundamental
fairness and due process is not, however, supported by any

factual allegations in the Amended Complaint. Rather, as
Plaintiff's counsel represented during the hearing on
Defendants' motion to dismiss, and as appears later in the
Amended Complaint, Plaintiff intends to assert a breach of
contract claim based on a breach of the "covenants of good faith
and fair dealing, by failing to submit plaintiff's dismissal to
the entire faculty." Id. ¶ 19.

  Under Pennsylvania law, "[e]very contract imposes on
each party a duty of good faith and fair dealing in its
performance and its enforcement." Kaplan v. Cablevision of PA,
Inc., 671 A.2d 716, 722 (Pa. Super. Ct. 1996) (quoting
Restatement (Second) of Contracts § 205 (1981)). But "this
obligation of good faith is tied specifically to and is not
separate from the [express] duties a contract imposes on the
parties." Murphy v. Duquesne Univ. of the Holy Ghost, 777 A.2d
418, 434 n.11 (Pa. Super. Ct. 2001). As such, Pennsylvania does
not recognize a separate cause of action for such breaches.
Engstrom v. John Nuveen & Co., 668 F. Supp. 953, 958 (E.D. Pa.
1987). Therefore, an alleged breach of the duty of good faith
and fair dealing is construed as a breach of contract claim. Id.

  Here, as previously discussed, Plaintiff has failed to
identify a specific contractual duty imposed upon the
University. Without an identified contractual obligation, the
Court is unable to look at the University's actions or inactions

13

to determine whether it has in fact adhered to those contractual duties in good faith. See Baker v. Lafayette Coll., 504 A.2d 247, 256 (Pa. Super. Ct. 1986) (explaining in the context of an employer-employee relationship that the defendant-college's "obligation to act in good faith extends only to the performance of those contractual duties it has chosen to assume"). Therefore, Plaintiff has failed to state a claim for breach of the implied covenant of good faith and fair dealing as well.

     B.   <u>Title VI Claim Against the University</u>

       Defendants next move to dismiss Plaintiff's Title VI claim against the University. Title VI of the Civil Rights Act provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

       To state a claim under Title VI, a plaintiff must show that he or she (1) was a member of a protected class, (2) qualified for the benefit or program at issue, and (3) suffered an adverse action, and that (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. Se. Pa. Transp. Auth. v. Gilead Scis., Inc., 102

F. Supp. 3d 688, 701 (E.D. Pa. 2015) (citing Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 274-75 (3d Cir. 2014)).

"Private individuals who bring suits under Title VI may not recover compensatory relief unless they show that the defendant engaged in intentional discrimination." Blunt, 767 F.3d at 272. Intentional discrimination may be shown "with evidence demonstrating either discriminatory animus or deliberate indifference." Gilead, 102 F. Supp. 3d at 701.

Here, Plaintiff alleges that the University "through its agents, servants, and employees, discriminated against [her] by creating and perpetuating a racist environment when faculty members Dr. Albaugh and Dr. Biely repeatedly referred to bone structures in the human skeleton as 'slaves' and 'slave masters' during classes which plaintiff attended." Am. Compl. ¶ 27.

Plaintiff further alleges that "[s]uch offensive characterization by professors . . . speaks for itself, but was extremely offensive to plaintiff and to students of color, and was inherently in violation of Title VI of the Civil Rights Act."[2] Id. ¶ 28. According to Plaintiff, "[s]uch conduct is per

---

[2] Plaintiff also alleges that "Dr. Albaugh was instrumental in the failure or removal of all African-American students in the Class of 2016 in the Physical Therapy Program." Am. Compl. ¶ 28. This averment does not seem to relate to Plaintiff's individual claims, and there are no other related allegations.

se discriminatory, particularly in a classroom setting designed to teach professionalism to students." Id. ¶ 29.

These allegations, standing alone, do not demonstrate discriminatory animus or deliberate indifference by the individual defendants, let alone by the University, against which she brings her Title VI claim. Moreover, Plaintiff cites no authority for the proposition that a professor's use of the words "slave" or "slave master" is per se discriminatory under Title VI. Although Plaintiff alleges that the University "knew or should have known of [Drs. Albaugh and Biely's] discriminatory conduct," id. ¶ 31, this is a legal conclusion that, without factual allegations to support it, is not entitled to a presumption of truth. See, e.g., Blunt, 826 F. Supp. 2d at 762 ("Without evidence that the document was created with the authorization of the School District or that the School District had actual knowledge of any presentation, any discrimination that can be inferred from its creation or presentation cannot be imputed to the School District."). For example, Plaintiff has not alleged that she filed any sort of complaint or otherwise notified the University of some illegal and adverse action against her and that the University nevertheless permitted the conduct to continue. Therefore, the Court will dismiss Plaintiff's Title VI claim against the University.

16

## IV.   LEAVE TO AMEND

"Leave to amend must generally be granted unless equitable considerations render it otherwise unjust." Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006) (citing Forman v. Davis, 371 U.S. 178, 182 (1962)). In civil rights cases, "district courts must offer amendment – irrespective of whether it is requested – when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000).

Here, although the Amended Complaint is laced with references to discrimination, civil rights, and other federal policy, the thrust of Plaintiff's arguments is a breach of contract theory of liability subject to Pennsylvania law. As such, the lenient amendment standard offered for civil rights cases does not apply. Moreover, the Court previously dismissed Plaintiff's original Complaint and permitted Plaintiff to amend some of her claims. ECF Nos. 16, 17. But the Court was clear that "the identified deficiencies discussed" in the Court's memorandum on the previous motion to dismiss "must be cured for

17

Plaintiff's case to survive a subsequent motion to dismiss." ECF No. 16, at 18.

As discussed above, Plaintiff has not cured the deficiencies, and Plaintiff has yet again failed to state any claim for relief against any defendant. Therefore, leave to amend will not be granted a second time.

**V.    CONCLUSION**

For these reasons, the Court will grant Defendants' motion and dismiss Plaintiff's Amended Complaint with prejudice. An appropriate order follows.